UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JENNIFER R. LARKIN, individually and
on behalf of all those similarly situated,

        Plaintiff,

   v.                                                             Case No. 18-C-496

FINANCE SYSTEM OF GREEN BAY INC. and
JOHN DOES 1-25,

        Defendants.

## DECISION AND ORDER GRANTING MOTION TO DISMISS

      Plaintiff Jennifer Larkin filed this lawsuit on behalf of herself and all those similarly situated against Finance System of Green Bay and several John Does (collectively FSGB), alleging violations of the Fair Debt Collections Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq*. More specifically, Larkin alleges that FSGB sent her a form letter about a debt she incurred for personal, family, or household purposes that contained statements that are false, deceptive, and misleading. The complaint alleges FSGB sent similar letters to other consumers.

      FSGB originally moved for dismissal on the ground that Larkin's claim is barred by the FDCPA's one-year statute of limitations and, in the alternative, for failure to state a claim. At the Court's request, the parties have also addressed the question of whether Larkin has standing under *Spokeo v. Robbins*, 136 S. Ct. 1540 (2016). Having considered the arguments of counsel, I now conclude that Larkin does have standing and that her claim is not barred by the one-year statute of limitations. I also conclude, however, that based on the letter itself, her complaint fails to state a claim on which relief can be granted. FSGB's motion will therefore be granted.

**LEGAL STANDARD**

A motion to dismiss tests the sufficiency of the complaint to state a claim upon which relief can be granted. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990); *see* Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss under Rule 12(b)(6), the court must accept all well-pleaded factual allegations as true and draw all inferences in the light most favorable to the non-moving party. *Gutierrez v. Peters*, 111 F.3d 1364, 1368–69 (7th Cir. 1997); *Mosley v. Klincar*, 947 F.2d 1338, 1339 (7th Cir. 1991). Rule 8(a)(2) mandates that a complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The plaintiff's short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While a plaintiff is not required to plead detailed factual allegations, it must plead "more than labels and conclusions." *Id*. A simple, "formulaic recitation of the elements of a cause of action will not do." *Id*. A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

**ALLEGATIONS OF THE COMPLAINT**

Plaintiff Jennifer Larkin is a Wisconsin resident, who originally incurred a debt to a healthcare provider. FSGB, a corporation that engages in the collection of debts owed to others, is incorporated under the laws of Wisconsin and maintains its principal place of business in Green Bay, Wisconsin. The Court has jurisdiction under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

On March 28, 2017, FSGB mailed a form debt-collection letter to Larkin, attempting to collect a debt in the amount of $57.08 that was originally owed to Green Bay Radiology SC. The letter included the following language:

2

> You do not want to lose our confidence. You want to be worthy of the faith put in you by your creditor; yet the above past due account remains unpaid, possibly through an oversight on your part.
>
> Please contact your creditor or our office to make arrangements for payment on the above account. We are interested in you preserving a good credit rating with the above creditor.

ECF No. 1-1.

On March 28, 2018, Larkin filed this lawsuit on behalf of herself and all others to whom FSGB mailed such a letter, alleging that the letter violated 15 U.S.C. § 1692e because it was confusing, misleading, and deceptive to the unsophisticated consumer. ECF No. 1. Larkin alleges that the letter falsely implies that FSGB had confidence in Larkin, that Radiology SC placed faith in Larkin, and that Green Bay Radiology maintained a credit rating for Larkin, who, as of the date of the letter, had a "good credit rating." *Id.* ¶ 29. Larkin also alleges that the letter constitutes an "unconscionable means to collect or attempt to collect a debt in violation of 15 U.S.C. § 1692f." *Id.* ¶ 44. She seeks statutory damages of up to $1,000 for herself and members of the class together with attorney's fees and cost.

## ANALYSIS

**A. Standing**

At the court's request, the parties submitted supplemental briefs on the issue of whether Larkin has standing to assert an FDCPA claim. Although I have addressed that issue before in the context of an FDCPA claim, *see, e.g.*, *Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 WL 2539782, at *4 (E.D. Wis. June 12, 2017), several recent cases within the circuit caused me to question whether my analysis was correct. *See Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884 (7th Cir. 2017); *Zuniga v. Asset Recovery Solutions*, No. 17-cv-05119, 2018 WL 1519162 (N.D.

Ill. Mar. 28, 2018). The issue of standing is, of course, fundamental to whether the case can proceed. Whether a plaintiff has standing is an issue of subject matter jurisdiction, *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016). Article III of the United States Constitution limits the jurisdiction of federal courts to actual "cases" and "controversies" brought by litigants who demonstrate standing. *Groshek*, 865 F.3d at 886. "The 'irreducible constitutional minimum of standing' consists of three elements: injury in fact, causation, and redressability." *Id*. (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). The plaintiff bears the burden of pleading sufficient factual allegations that "plausibly suggest" each element. *Id*. (citing *Silha v. ACT, Inc.*, 807 F.3d 169, 174 (7th Cir. 2015)).

The issue of standing in cases seeking only statutory damages for alleged violations of prophylactic acts such as the FDCPA seemingly took on new life with the Supreme Court's decision in *Spokeo*. In *Spokeo*, the Court vacated the Ninth Circuit's decision in favor of the plaintiff in a Fair Credit Reporting Act (FCRA) case because the lower court had failed to consider whether the plaintiff had alleged an injury-in-fact sufficient to confer standing. The FCRA is intended to ensure fair and accurate credit reporting in part by regulating the creation and use of consumer reports by consumer reporting agencies for certain purposes, including credit transactions, insurance, licensing, consumer-initiated business transactions, and employment. 136 S. Ct. at 1545 (citing 15 U.S.C. §§ 1681(a)(1); 1681a(d)(1)(A)-(C); 1681b). In *Spokeo*, the plaintiff alleged that the defendant, which operated an internet "people search engine" violated the FCRA by gathering and disseminating information about him in response to a search that was incorrect. More specifically, the profile generated by the defendant falsely stated that the plaintiff was married, had children, was in his 50's, had a job, was relatively affluent, and held a graduate degree. *Id*. at 1546. But there was no

4

allegation that the plaintiff had suffered any harm as a result of the inaccuracies in the profile. The district court dismissed the plaintiff's complaint on the ground that he had not properly pled an injury-in-fact as required by Article III. The Ninth Circuit reversed, holding that the plaintiff's allegation that the defendant had violated his statutory rights was sufficient to satisfy the injury-in-fact requirement of Article III. *Id.*

In vacating the Ninth Circuit's decision, the Court emphasized the requirement that there be an injury-in-fact, "the '[f]irst and foremost' of standing's three elements." *Id.* at 1547 (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998)). It is not enough to allege a bare violation of law, the Court explained. "Injury in fact is a constitutional requirement, and it is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Id.* at 1547–48 (internal quotation marks and alterations omitted). "To establish injury in fact," the Court stated, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* (quoting *Lujan*, 504 U.S. at 560). For an injury to be particularized, the Court explained, "it must affect the plaintiff in a personal and individual way." *Id.* at 1548 (internal quotation marks omitted). To be concrete, "the injury must be '*de facto*'; that is, it must actually exist." *Id.* (internal quotation marks omitted). The adjective "concrete," as understood by the Court, means "real, and not abstract." *Id.* (internal quotation marks omitted). But "concrete," the Court noted, is not the same as "tangible." *Id.* at 1549. In determining whether an intangible harm constitutes an injury-in-fact, a court must look both at history and the judgment of Congress. *Id*. This is because "'Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none

5

existed before.'" *Id.* (citing *Lujan*, 504 U.S. at 580). For this reason, "'the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact,' such as where the statutory violation creates 'risk of real harm.'" *Evans v. Portfolio Recovery Assocs., LLC*, 889 F.3d 337, 344 (7th Cir. 2018) (quoting *Spokeo*, 136 S. Ct. at 1549). "In other words, a plaintiff in such a case need not allege any additional harm beyond the one Congress has identified." *Id.*

Applying these principles here, I conclude Larkin's complaint is sufficient to allege the required injury-in-fact. Her claim that the letter she received from FSGB contained false, deceptive, and misleading statements alleges a violation of § 1692e. If true, such statements create a risk of causing her the kind of harm the FDCPA was intended to prevent. Though intangible, such risk of harm is particularized since the letter was sent to Larkin and concrete since the risk of harm from false, misleading, and deceptive statements regarding one's debts is real. It thus follows that the requirement of standing is met.

**B. Timeliness**

FSGB argues that Larkin's claim must be dismissed as untimely because it is barred by the FDCPA's statute of limitations. It contends Larkin was required to initiate this lawsuit on or before March 27, 2018, or one year from the date the letter was mailed, in accordance with 15 U.S.C. § 1692k. *See* § 1692k(d) (FDCPA lawsuit must be filed "within one year from the date on which the violation occurs"); *see also Berntsen v. Conell Law Office*, No. 04-C-548, 2006 WL 1049632, at *1 (E.D. Wis. Apr. 18, 2006) (explaining that a cause of action under the FDCPA accrues on the date a collection letter is mailed). FSGB argues Larkin's claim is untimely and must be dismissed because she filed her complaint on March 28, 2018, one year and one day after the letter was mailed.

6

Larkin counters that, under Federal Rule of Civil Procedure 6, the statute of limitations period does not begin to run on the date of the violation but rather begins on the following day. Fed. R. Civ. P. 6(a) ("In computing any period of time prescribed or allowed by . . . any applicable statute, the day of the act, event, or default from which the designated period of time begins to run shall not be included."). She maintains that, because she could file her complaint on March 28, 2018, the 365th day after the violation occurred, she has filed a timely lawsuit.

Relying on *Mattson v. U.S. West Communications, Inc.*, FSGB maintains that Rule 6(a) does not apply in this case because Larkin has not met the jurisdictional requirements of § 1692k(d). 967 F.2d 259 (8th Cir. 1992) (holding that Rule 6(a) cannot be used to compute a limitations period to determine if jurisdiction exists under § 1692k because it is a jurisdictional statute). But the Seventh Circuit has explicitly held that the FDCPA's statute of limitations provision is not a jurisdictional restriction. *Marshall-Mosby v. Corp. Receivables, Inc.*, 205 F.3d 323, 327 (7th Cir. 2000) (citing *Cent. States, Se. & Sw. Areas Pension Fund v. Navco*, 3 F.3d 167, 173 (7th Cir. 1993)). Because § 1692k is not a jurisdictional statute, the Court may use Rule 6(a) to calculate the statute of limitations period in this case. In other words, the date Larkin received the letter will not be considered in determining whether her lawsuit was filed within one year. As a result, Larkin's lawsuit was timely filed and is not barred by the statute of limitations.

**C. Merits**

Even though Larkin has standing to pursue her claims, the complaint fails to state a claim upon which relief can be granted. The FDCPA makes it unlawful for a debt collector to use "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. In determining whether a claim is "false, deceptive, or misleading," the

court applies an objective standard, that of the "unsophisticated consumer." *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 774 (7th Cir. 2007). The objective standard assumes that while the consumer is unsophisticated and may be "uniformed, naive, or trusting," *Gruber v. Creditors' Prot. Serv., Inc.*, 742 F.3d 271, 273 (7th Cir. 2014) (internal quotation marks omitted), he or she is not irrational. *White v. Goodman*, 200 F.3d 1016, 1020 (7th Cir. 2000). The objective test asks "whether a person of modest education and limited commercial savvy would be likely to be deceived" by the statement. *Evory*, 505 F.3d at 774. The test presumes that the unsophisticated consumer has at least a "rudimentary knowledge about the financial world, is wise enough to read collection notices with added care, possesses 'reasonable intelligence,' and is capable of making basic logical deductions and inferences." *Pettit v. Retrieval Masters Creditor Bureau, Inc.*, 211 F.3d 1057, 1060 (7th Cir. 2000). Additionally, the "objective test disregards 'bizarre' or 'idiosyncratic' interpretations of collection letters." *Dunbar v. Kohn Law Firm, S.C.*, 896 F.3d 762, 765 (7th Cir. 2018) (citing *Gruber,* 742 F.3d at 274; *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005)).

Larkin alleges that the unsophisticated consumer would be misled by the letter to believe that FSGB "has confidence" in her and that the creditor, Green Bay Radiology, "has faith" in her that she would lose if she did not pay her debt. But these statements are obviously true. Unless a radiologist is providing services for free, he or she no doubt trusts, i.e., has faith, that the person served will pay. Likewise, debt collectors likely have some confidence that many people, when provided notice of an outstanding debt, will pay if they are able. Otherwise, why make the effort? Larkin's assertion that these innocuous statements imply that nonpayment will harm the physician-patient relationship is bizarre and idiosyncratic. While an unsophisticated consumer may read a collection letter literally,

8

she is presumed to have a rudimentary knowledge of the financial world and is capable of basic logical deductions. Even an unsophisticated consumer would read and interpret the form letter to understand that the letter is simply urging her to pay her debt, assuming she is able. Larkin's interpretation requires the unsophisticated consumer to disregard the entire purpose of the letter, which is to collect the debt owed the business that employs the radiologist that provided services to her, and infer that these comments are made about her as an individual. This proposed reading is "fantastic conjecture" and can be disregarded. *Taylor v. Cavalry Inv., L.L.C.*, 365 F.3d 572, 574 (7th Cir. 2004) (citations omitted). It is clear from the language that "not even 'a significant fraction of the population would be misled' by the debt collector's letter." *Gruber*, 742 F.3d at 273–74. For these reasons, as well, the statements are neither misleading nor deceptive.

Not only are these comments not misleading or deceptive, they are the kind of comments that are generally considered to be "puffing." Puffing is a rhetorical device that is "designed to create a mood rather than to convey concrete information or misinformation." *Taylor*, 365 F.3d at 575. The letter's comments about a consumer acting on paying a bill are meant to create a mood, not to relay concrete information about paying such a debt. Moreover, it would be perfectly obvious to the dimmest of debtors that a collector would like her to pay the debt off and would create positive reinforcement—through the use of terms like faith and trust—to encourage payment of the debt. That, however, does not make the comments anything more than puffery. *See, e.g.*, *Gruber*, 742 F.3d at 275 (holding "we believe you want to pay your just debt" to be puffery); *Taylor*, 365 F.3d at 575 (holding "act now to satisfy your debt" to be puffery). The test is the hypothetical "unsophisticated consumer," not the hypersensitive consumer. As a result, Larkin's claims fail as a matter of law.

9

For similar reasons, Larkin's claim that the statement "we are interested in you preserving a good credit rating with the above creditor" fails. To the extent that the statement infers that failing to pay a debt would affect Larkin's credit rating, that is a truthful statement. *See, e.g.*, *Harvey v. United Adjusters*, 509 F. Supp. 1218, 1221 (D. Or. 1981) (finding that "Your credit is a valuable asset. Pay your bills and retain good credit." does not violate the FDCPA). Moreover, it is not misleading or deceptive because the unsophisticated consumer has a basic financial background and would know the "well-known fact . . . that a failure to pay one's bills will affect his ability to obtain credit in the future." *Wright v. Credit Bureau of Ga., Inc.*, 555 F. Supp. 1005, 1007 (N.D. Ga. 1983).

As for Larkin's contention that the unsophisticated consumer would infer from that statement that her doctor was maintaining a "credit rating system" and that her doctor-patient relationship would be harmed for nonpayment, this argument is again bizarre and idiosyncratic. The unsophisticated consumer has a basic understanding of the financial system, which includes a basic understanding as to credit ratings. To discard this basic understanding and operate under a belief that each creditor maintains their own ratings would be nothing short of a bizarre interpretation of the statement. As a result, the Court finds that this statement does not violate the FDCPA.

## CONCLUSION

For the reasons explained above, Defendants' motion to dismiss (ECF No. 6) is **GRANTED** and the case is **DISMISSED** for failure to state a claim. The Clerk shall enter judgment accordingly.

**SO ORDERED** this  8th  day of November, 2018.

                                                        s/ William C. Griesbach
                                                       William C. Griesbach, Chief Judge
                                                       United States District Court